UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRADLEY YU, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GREENSKY, INC., DAVID ZALIK, ROBERT PARTLOW, JOEL BABBIT, GERALD BENJAMIN, JOHN FLYNN, GREGG FREISHTAT, NIGEL MORRIS, ROBERT SHEFT, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, SUNTRUST ROBINSON HUMPHREY, INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INC., CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, RAYMOND JAMES & ASSOCIATES, INC., GUGGENHEIM SECURITIES, LLC, SANDLER O'NEILL & PARTNERS, L.P., AND FIFTH THIRD SECURITIES, INC.,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Bradley Yu ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding GreenSky, Inc. ("GreenSky" or the "Company"), analysts' reports and advisories

1

about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of individuals who purchased or otherwise acquired GreenSky Class A common stock pursuant or traceable to the Company's false and misleading registration statement and prospectus, who were damaged thereby, and who seek to pursue remedies under the Securities Act of 1933 ("Securities Act").

2. GreenSky is a financial technology company in Atlanta, Georgia, and runs an online platform that allows creditors to process loan applications at the point of sale. GreenSky's platform is actively used by over 10,000 businesses. Consumers use GreenSky's mobile app to make purchases from those listed business by applying for on-the-spot financing via the app.

3. GreenSky's two principal sources of revenue are: (i) "transaction fees" the Company receives upfront when a consumer secures a loan through the GreenSky platform and makes a purchase; and (ii) recurring fees generated from banks over the lives of loans it facilitates. Transaction fees are critical to GreenSky's business. For example, transaction fees accounted for 87% of the Company's revenue in 2017. These transaction fees vary per the particular agreement between GreenSky and a merchant.

4. GreenSky traditionally catered to businesses in the home improvement and solar energy market. GreenSky charged solar panel business substantially higher transaction fees as compared to others on its platform. GreenSky charged merchants a 7% transaction fee on average, as compared to the typical 14% transaction fee it applied to solar panel merchants.

5. Currently, GreenSky is moving into the elective healthcare market, wherein the Company charges lower-than-average transaction fees. GreenSky has simultaneously started moving away from its business with solar panel merchants.

6. Approximately 20% of GreenSky's transaction-fee revenue came from solar panel merchants in the years leading up to 2018. Starting in 2018, however, GreenSky made merely 4% of its revenue in transaction fees from solar panel businesses. Thus, following this transition away from the solar power business and towards the elective healthcare market, GreenSky's transaction-fee revenue significantly declined and will foreseeably continue to do so absent a change in focus back to its solar power business.

7. On April 27, 2018, GreenSky filed a registration statement. Then, on May 25, 2018, GreenSky filed a prospectus for its upcoming initial public offering ("IPO"). GreenSky's registration statement and prospectus are referred to herein as the "Offering Documents."

8. On May 29, 2018, GreenSky's IPO closed and the Company sold 43.7 million shares of Class A common stock at $23.00 per share in its IPO, for gross proceeds of over $1 billion.

9. The Offering Documents were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation as the Offering Documents failed to disclose: (i) that GreenSky was transitioning away from the solar power market in favor of the elective healthcare market; (ii) foreseeable negative effects on GreenSky's profits because of significant differences in transaction fees GreenSky charged to different classes of merchants; (iii) the primacy of the merchant mix as a driver of GreenSky's transaction-fee revenue; (iv) the ongoing deterioration in GreenSky's

transaction-fee revenue, while touting GreenSky's growth and financial performance; (v) the negative impacts of GreenSky's changing merchant mix on EBITDA; (vi) the markedly lower transaction fees GreenSky charges to healthcare companies; and (vii) as a result of the foregoing, GreenSky's Offering Documents were materially false and misleading at all relevant times.

10. On August 7, 2018, GreenSky issued a release announcing its financial results for the second quarter of 2018. The release indicated that the Company's transaction-fee rate was approximately 53 basis points below the rate achieved in the second quarter of 2017. In an earnings call, Defendant Zalik acknowledged that this rapid reduction was attributable to the transition away from solar panel merchants and toward elective healthcare companies.

11. On November 6, 2018, GreenSky lowered its full year 2018 transaction volume guidance from between $5.1 and $5.3 billion to between $4.9 and $5.1 billion, and lowered its full year 2018 Adjusted EBITDA guidance from between $192 and $199 million to between $165 and $175 million. GreenSky attributed the reduction to a general labor shortage and unfavorable shifts in its loan mix.

12. Following these disclosures, GreenSky's stock price closed at $9.28 per share, a decline of $13.72, or approximately 60%, from the IPO price of $23.00 per share.

13. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o).

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

16. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 and Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa(c)). GreenSky is headquartered in this District, and a significant portion of its actions and the subsequent damages took place in this District.

**PARTIES**

17. Plaintiff purchased or otherwise acquired GreenSky common stock as described in the attached certification and was damaged by the revelation of the alleged corrective disclosure.

18. Defendant GreenSky is incorporated in Delaware, and its stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "GSKY." GreenSky's corporate headquarters are located at 5565 Glenridge Connector, Suite 700, Atlanta, Georgia.

19. Defendant David Zalik was, at all relevant times, the Chief Executive Officer of the Company and Chairman of the Board of Directors, and signed or authorized the signing of the Offering Documents.

20. Defendant Robert Partlow was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Offering Documents.

21. Defendant Joel Babbit was a Director of the Company and signed or authorized the signing of the Offering Documents.

22. Defendant Gerald Benjamin was a Director of the Company and signed or authorized the signing of the Offering Documents.

23. Defendant John Flynn was a Director of the Company and signed or authorized the signing of the Offering Documents.

24. Defendant Gregg Freishtat was a Director of the Company and signed or authorized the signing of the Offering Documents.

25. Defendant Nigel Morris was a Director of the Company and signed or authorized the signing of the Offering Documents.

26. Defendant Robert Sheft was a Director of the Company and signed or authorized the signing of the Offering Documents.

27. Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") was an underwriter for the Company's IPO. In the Offering, Goldman Sachs agreed to purchase 10,108,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

28. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter for the Company's IPO. In the Offering, J.P. Morgan agreed to purchase 10,108,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

29. Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter for the Company's IPO. In the Offering, Morgan Stanley agreed to purchase 6,498,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

30. Defendant Citigroup Global Markets Inc. ("Citigroup") was an underwriter for the Company's IPO. In the Offering, Citigroup agreed to purchase 2,736,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

31. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") was an underwriter for the Company's IPO. In the Offering, Credit Suisse agreed to purchase 2,736,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

32. Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") was an underwriter for the Company's IPO. In the Offering, Merrill Lynch agreed to purchase 2,736,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

33. Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") was an underwriter for the Company's IPO. In the Offering, SunTrust agreed to purchase 1,026,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

34. Defendant Raymond James & Associates, Inc. ("Raymond James") was an underwriter for the Company's IPO. In the Offering, Raymond James agreed to purchase 684,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

35. Defendant Sandler O'Neill & Partners, L.P. ("Sandler O'Neill") was an underwriter for the Company's IPO. In the Offering, Sandler O'Neill agreed to purchase 684,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

36. Defendant Fifth Third Securities, Inc. ("Fifth Third") was an underwriter for the Company's IPO. In the Offering, Fifth Third agreed to purchase 342,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

37. Defendant Guggenheim Securities, LLC ("Guggenheim") was an underwriter for the Company's IPO. In the Offering, Guggenheim agreed to purchase 342,000 shares of the Company's Class A common stock, exclusive of the over-allotment option.

38. Defendants Zalik, Partlow, Babbit, Benjamin, Flynn, Freishtat, Morris, and Sheft are hereinafter collectively referred to as the "Individual Defendants."

39. Defendants Goldman Sachs, J.P. Morgan, Morgan Stanley, Citigroup, Credit Suisse, Merrill Lynch, SunTrust, Raymond James, Sandler O'Neill, Fifth Third, and Guggenheim are hereinafter collectively referred to as the "Underwriter Defendants."

40.     The Individual Defendants and Underwriter Defendants together are hereinafter collectively referred to as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

41.     GreenSky is a financial technology company in Atlanta, Georgia, and runs an online platform that allows creditors to process loan applications at the point of sale. GreenSky's platform is actively used by over 10,000 businesses. Consumers use GreenSky's mobile app to make purchases from those listed business by applying for on-the-spot financing via the app.

42.     GreenSky's two principal sources of revenue are: (i) "transaction fees" the Company receives upfront when a consumer secures a loan through the GreenSky platform and makes a purchase; and (ii) recurring fees generated from banks over the lives of loans it facilitates. Transaction fees are critical to GreenSky's business. For example, transaction fees accounted for 87% of the Company's revenue in 2017. These transaction fees vary per the particular agreement between GreenSky and a merchant.

43.     GreenSky traditionally catered to businesses in the home improvement and solar energy market. GreenSky charged solar panel business substantially higher transaction fees as compared to others on its platform. GreenSky charged merchants a 7% transaction fee on average, as compared to the typical 14% transaction fee it applied to solar panel merchants.

44.     Currently, GreenSky is moving into the elective healthcare market, wherein the Company charges lower-than-average transaction fees. GreenSky has simultaneously started moving away from its business with solar panel merchants.

45.     Approximately 20% of GreenSky's transaction-fee revenue came from solar panel merchants in the years leading up to 2018. Starting in 2018, however, GreenSky made merely 4%

of its revenue in transaction fees from solar panel businesses. Thus, following this transition away from the solar power business and towards the elective healthcare market, GreenSky's transaction-fee revenue significantly declined and will foreseeably continue to do so absent a change in focus back to its solar power business.

46. On April 27, 2018, GreenSky filed a registration statement. On May 25, 2018, GreenSky filed a prospectus for its upcoming IPO.

47. On May 29, 2018, GreenSky's IPO closed and the Company sold 43.7 million shares of Class A common stock at $23.00 per share in its IPO, for gross proceeds of over $1 billion.

## Materially False and Misleading Statements and Omissions

48. On April 27, 2018, GreenSky filed a registration statement. On May 25, 2018, GreenSky filed a prospectus for its upcoming IPO. On May 29, 2018, GreenSky's IPO closed and the Company sold 43.7 million shares of Class A common stock at $23.00 per share in its IPO, for gross proceeds of over $1 billion.

49. With respect to GreenSky's transaction-fee revenue, the Offering Documents stated, in relevant part:

> We have a strong recurring revenue model built upon repeat and growing usage by merchants. We derive most of our revenue and profitability from upfront transaction fees that merchants pay us every time they facilitate a transaction using our platform. Thus, our profitability is strongly correlated with merchant transaction volume. The transaction fee rate depends on the terms of financing selected by a consumer.

50. The Offering Documents also stressed:

> Transaction fees. We earn a specified transaction fee in connection with each purchase made by a consumer based on a loan's terms and promotional features. Transaction fees are billed to, and collected directly from, the merchant and are considered to be earned at the time of the merchant's transaction with the consumer. We also may earn a specified interchange fee in connection with purchases where

9

payments are processed through a credit card payment network. Transaction fees constitute the majority of our total revenues, accounting for approximately 83% of our total revenues for the three months ended March 31, 2018.

51. The Offering Documents also tout GreenSky's purported growth over the relevant time period:

> We have achieved significant growth in active merchants, transaction volume, total revenue, net income and Adjusted EBITDA. Our low-cost go-to-market strategy, coupled with our recurring revenue model, has helped us generate strong margins. Transaction volume (which we define as the dollar value of loans facilitated on our platform during a given period) was $3.8 billion in 2017, representing an increase of 31% from $2.9 billion in 2016. Further, transaction volume was $1.0 billion in the three months ended March 31, 2018, representing an increase of 47% from $0.7 billion in the three months ended March 31, 2017. Active merchants (which we define as home improvement merchants and healthcare providers that have submitted at least one consumer application during the 12 months ended at the date of measurement) totaled 12,231 as of March 31, 2018, representing an increase of 52% from 8,048 as of March 31, 2017. Our total revenue grew 23% from $264 million in 2016 to $326 million in 2017, net income grew 12% from $124 million in 2016 to $139 million in 2017, and Adjusted EBITDA grew 21% from $131 million in 2016 to $159 million in 2017. For the period ended March 31, 2018, total revenue was $85 million, net income was $19 million and Adjusted EBITDA was $27 million.

52. The Offering Documents additionally assert that the elective healthcare sector represents a growth opportunity:

> In 2016, we began expanding into elective healthcare, which, like the home improvement market, is a large, fragmented market featuring creditworthy consumers who tend to make large-ticket purchases. We believe the elective healthcare market rivals in size the home improvement market in terms of annual spending volume, based on the number and cost of annual procedures performed. Elective healthcare providers include doctors, dentists, outpatient surgery centers and clinics providing orthodontics, cosmetic and aesthetic dentistry, vision correction, bariatric surgery, cosmetic surgery, hair replacement, reproductive medicine, veterinary medicine and hearing aid devices. We believe that because of population aging, innovations in medical technology and ongoing healthcare cost inflation, we are well-positioned to increase volume in the growing elective healthcare industry vertical.

10

53. The statements referenced in ¶¶ 49-52 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose: (i) that GreenSky was transitioning away from the solar power market in favor of the elective healthcare market; (ii) foreseeable negative effects on GreenSky's profits because of significant differences in transaction fees GreenSky charged to different classes of merchants; (iii) the primacy of the merchant mix as a driver of GreenSky's transaction-fee revenue; (iv) the ongoing deterioration in GreenSky's transaction-fee revenue, while touting GreenSky's growth and financial performance; (v) the negative impacts of GreenSky's changing merchant mix on EBITDA; (vi) the markedly lower transaction fees GreenSky charges to healthcare companies; and (vii) as a result of the foregoing, GreenSky's Offering Documents were materially false and misleading at all relevant times.

### The Truth Emerges

54. On August 7, 2018, GreenSky issued a release announcing its financial results for the second quarter of 2018. According to the release, GreenSky's transaction-fee rate was approximately 53 basis points lower than that achieved in the second quarter of 2017. In an earnings call with analysts and investors, Defendant Zalik disclosed the sharp reduction in the transaction-fee rate was attributable to the decision to move away from solar panel merchants and towards elective healthcare companies.

55. On November 6, 2018, GreenSky issued a release announcing its financial results for the third quarter of 2018. According to the release, GreenSky's transaction-fee rate was 35 basis points lower than that achieved in the third quarter of 2017. In an earnings call with analysts and investors, Defendant Zalik again acknowledged that the sharp decline in transaction fees was

11

"entirely driven by our solar mix going from a high of almost 20% of our business in [2017] to 4% of our business." With a single fiscal quarter remaining that year, GreenSky drastically lowered its 2018 outlook for Adjusted EBITDA from growth of 20-25% to 4-10%.

56. Notably, although the IPO occurred after GreenSky's tactical move away from solar businesses and towards healthcare markets, the foreseeable results of such a shift were not disclosed in the Offering Documents.

57. Following these disclosures, GreenSky's stock price dropped sharply to $9.28 per share on November 6, 2018, which constituted a marked reduction from the IPO price of $23.00 per share and post-offering high of $26.77 per share.

58. Subsequently, GreenSky's Board of Directors approved the repurchase of $150 million of GreenSky common stock.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

59. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all purchasers of GreenSky Class A common stock issued pursuant to and/or traceable to the Company's Offering Documents. Excluded from the Class are defendants and their family members, directors and officers of GreenSky and their families and affiliates.

60. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. GreenSky has millions shares of stock outstanding, owned by hundreds or thousands of persons.

61. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a) Whether the Securities Act was violated by defendants;

(b) Whether defendants omitted and/or misrepresented material facts;

(c) Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e) Whether the price of GreenSky common stock was artificially inflated; and

(f) The extent of damage sustained by Class members and the appropriate measure of damages.

62. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

63. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

64. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violations of Section 11 of the Securities Act Against all Defendants

65. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

67. The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

68. GreenSky is the registrant for the IPO. Individual Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

69. As issuer of the shares, GreenSky is strictly liable to Plaintiff and the Class for the misstatements and omissions.

70. The Underwriter Defendants are responsible for the contents of the Offering Documents based on their status as underwriters.

71. None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

72. By reasons of the conduct herein alleged, each Individual Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

73. Plaintiff acquired GreenSky securities pursuant and/or traceable to the Offering Documents for the IPO.

74. Plaintiff and the Class have sustained damages. The value of GreenSky securities has declined substantially subsequent to and due to the Individual Defendants' violations.

## COUNT II

### For Violations of Section 12(a)(2) of the Securities Act
### Against GreenSky and the Underwriter Defendants

75. Plaintiff repeats and realleges each of the allegations contained above as if fully set forth herein.

76. This claim is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class, against GreenSky and the Underwriter Defendants.

77. Defendants promoted and sold GreenSky Class A common stock to Plaintiff and other members of the Class through the Prospectus.

78. Defendants owed Plaintiff and the other members of the Class who purchased GreenSky common stock pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that the statements were true and that no material facts were omitted from the Prospectus. The Prospectus contained untrue statements of material fact and/or failed to disclose material facts. Plaintiff did not know and could not have known of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired GreenSky common stock.

79. If Defendants had exercised reasonable care in the preparation and dissemination of the Prospectus, they would have known of the misstatements and omissions contained therein as set forth above.

80. Accordingly, Defendants violated Section 12(a)(2) of the Securities Act.

81. Plaintiffs suffered significant damages in connection with their purchases of GreenSky stock and as a result of Defendants' misconduct.

82. Defendants are liable to Plaintiff and the Class for damages suffered.

83. This action is brought within one year of the date of the alleged violation and within three years of the date the relevant securities were first offered to the public.

## COUNT III

**For Violations of Section 15 of the Securities Act Against the Individual Defendants**

84. Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

85. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

86. Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Evoqua within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Evoqua to engage in the acts described herein.

59. Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

87. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 4, 2019        Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

GreenSky, Inc. CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAW

**Submission Date**     2018-11-19 16:21:23

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.
2. I have reviewed a Complaint against GreenSky, Inc. ("GreenSky" or the "Company"), and authorize the filing of a motion on my behalf for appointment as lead plaintiff.
3. I did not purchase or acquire GreenSky securities at the direction of counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.
4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired GreenSky securities during the Class Period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.
5. To the best of my current knowledge, the transactions set forth below represent all of my transactions in GreenSky securities during the Class Period as specified in the Complaint.
6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve or served as a representative party on behalf of a Class under the federal securities laws.
7. I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the Class as ordered or approved by the Court.
8. I declare, under penalty of perjury, that the foregoing is true and correct.

**Print Name**          Bradley Yu

**REDACTED**

**Draw your signature using your mouse.**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Please continue to the next page of certification below.

**Full Name**          Bradley Yu
**REDACTED**

**GreenSky, Inc. (GSKY)** **Yu, Bradley**

## List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 7/25/2018 | Purchase | 1 | $19.3400 |